Good morning. May it please the Court, my name is Brent Welker, and I am appearing today on behalf of the Tamarack appellants. And I would like to reserve two minutes for rebuttal, please. The issue before the Court today is whether the mere existence of the second turnover order provides an absolute defense for J.P. Morgan Chase against the claims asserted by the Tamarack entities for wrongful dishonor. And we would suggest to the Court that unless constitutional due process has no relevance to these proceedings, that the answer to that question must be no. Counsel, then maybe I better, I'll just cut to the chase right now. Can you cite to me any legal authority that states that a person should disobey a court order in order to fulfill an obligation under a contract? I would cite two authorities for you, Your Honor. First is just the general black letter law that we cited in our briefs about the lack of obligation to follow or enforce a void order. But second, there is a case that was briefed in the five cases, letter of credit cases, that both sides briefed for the Court. There is one that I think is very helpful, and that's the Sanchi case. And in that case, the beneficiary under the letter of credit tendered its draft to Bay Bank, the issuer of the letter of credit. And it did so on October 11th of 1996. On October 15th, the bank notified Sanchi that there was a technical defect in the form of the draft and that it would need to be resubmitted. And so on the 18th, Shanxi submitted a second draft to draw on the letter of credit. In the interim period, Diablo Gore, TCI, had filed a complaint and sought an ex parte restraining order to halt payment under the letter of credit. That ex parte restraining order was not served on the agent for the Commonwealth of Massachusetts until the 24th of October in 1996. Because of that, that meant that there was a period of time that Sanchi had not been served with the order. And it was during that period of time that they tendered their second draft on the Commonwealth of Massachusetts, who was agent for Sanchi, excuse me, when they tendered their second draft on Bay Bank, excuse me. And for that reason, that was one of the primary reasons the court in the Massachusetts case found Bay Bank liable for wrongful dishonor. Let me go back and try to unravel this case, because that was a case involving, in effect, a gap within the Massachusetts system, and the whole transaction was in Massachusetts. Is that correct? That's correct, Your Honor. Do you dispute that under Texas law, the order, the turnover order was valid at the time that there was the attempt to draw? I wouldn't. No, I would not dispute that, Your Honor. But I would dispute Just start there. Okay. So it's valid under Texas law at the time that Tamrack tries to draw on the letter  to the court. If it's valid under the law of the court to which you make the tender, how is somebody, J.P. Morgan's, position to make a judgment that it might be deemed void for purposes of collection in another state? Your Honor, in this case, as we briefed, there was a deck action filed in Maricopa County Superior Court. Correct. And J.P. Morgan was a party to that declaratory judgment action. And in that, J.P. Morgan was given notice of all the procedural defects in this matter, the constitutional infirmities, that all courts are now in agreement caused the underlying default judgment to be defective. But it took a couple of Texas courts to even get to that resolution, correct? It did, Your Honor. However, there was an Arizona decision that said that that default judgment was void for insufficient service of process. It provided notice that there was a serious defect in the underlying judgment. You may have provided a serious defect, but you've got the Texas trial court making a decision, the second turnover order, which was appealed. You have an appellate court reading that says that's valid. Yes. Now, you're saying because a stray state says, no, it's not valid, therefore, J.P. Morgan isn't supposed to follow a valid court order? With all due respect, Your Honor, I would not characterize Arizona as a stray state. Stray from Texas. We cowboys call everything stray that's off the ranch. I understand, Your Honor. The only reason that I phrased it that way is Judge Teelburg, we provided you his decision, and he did a very thorough analysis of the jurisdictional issues and made a very clear finding in a contested action where both sides contested jurisdiction that Arizona law applied. Well, I'm sure it's a very fine decision, but it still does not, it did not do away with the Texas case which had been on appeal and which bound J.P. Morgan. How does the Arizona case interfere with the Texas case? Your Honor, I think that brings me back to the Shaughnessy case. In that case, the reason I think it's helpful for the court is that it placed an affirmative duty on the bank to monitor the status of the restraining order. It's not... But the difference there is that you have one court system, and we know either a restraining order is good, you know, it's either valid or it's not valid, and sometimes it expires, and then it's no longer valid in the Massachusetts system. Here you have a question of the Arizona court, so we take at face value what the Arizona court did, and the judge did a very careful analysis, but does the Arizona federal court judge have any authority to say that the Texas court can't enforce something? A state court judge. A state court in Texas? Yes. I mean, if you look at constitutional, comedy, full faith and credit, all the principles and constitutional principles, what would give that judge the authority, in effect, to upend the Texas decision? Your Honor, I don't believe Judge Teelberg was intervening in the Texas legal system, and we're not asking this court to do that. What we're asking this court to do is find JPMorgan Chase liable for wrongful dishonor because they disregarded the full scope of the evidence that was before it on the invalidity of the second turnover order. But they were following a valid legal state court order. Are we saying that they should anticipate that the Supreme Court of Texas would overturn that? Your Honor, I would not characterize that order as valid. I would say that the Texas courts viewed it as valid at that point in time, but there's a concept in criminal law, the fruit of the poisonous tree, and there's no question all courts are in agreement now that the underlying default judgment was constitutionally defective, because everyone agrees, and it's uncontested, that Richard Ross was never served with process. But let's stop, because when I asked you at the outset, was the Texas order valid at the time of the turnover, your answer was yes. Now, it later becomes determined to be invalid, but what, in your view, should JPMorgan have done in the face of the invalid Texas order? Your Honor, I think in the face of the existing Texas order, they could have done several things. One, which would have been the Tamarack entity's preference, is they could have disregarded that order and honored the letter of credit as drawn and approved by Judge Carroll. The second option they had is they could have, prior to filing that action, filed a federal declaratory judgment action. In this case, they waited until they had already tendered the money to the Texas court and then filed this deck action. They were aware in advance of the risks and perils if they paid on the letter of credit to the Texas court. JPMorgan, in its brief, cites to a discussion that took place between counsel at argument where JPMorgan and Chase was put on notice that they would be sued if they paid the money to the Texas courts. And so they could have filed the deck action prior to paying the Texas courts. Next, they could have gone to the Texas court and contested jurisdiction. We've already briefed those issues, but there's no question that the Texas courts failed to have any jurisdiction over the Tamarack entities. And apparently, JPMorgan Chase has waived the jurisdictional challenge because they were never served with process, not named as a party, prior to the issuance of the second turnover order, and so the court did not have of less than good faith that they have waived that jurisdictional challenge that would have prevented the immediate payment. Next, they could have moved the trial court for reconsideration. They could have given some evidence that they were willing to challenge what was a defective order. You mean he'd go back into a trial court and tell them not only the trial court was wrong, but the appellate court was wrong? I don't think the appellate court. Even in Texas, I don't think you can get away with that. I don't believe the appellate court held the turnover order at that point. Tell me, Judge Bolton, at the time this decision was made in Arizona, she was a state court judge? She was. So you have a state court judge in Arizona saying it's invalid. In Texas, you not only have a state trial court, but you have a court of appeals saying it's valid. Would, if JPMorgan failed to follow the second turnover order, would they be subject to contempt? I don't know, Your Honor. I don't know the answer to that question. There may be a possibility of some contempt proceedings. But I think those would also be subject to defense because of the lack of jurisdiction. I'm just saying, what we're doing now is saying, did they violate their letter? And if they would be subject to contempt by failing to do so, wouldn't that indicate that they should obey the court order? They faced a question as to whether to obey a... Valid court order. A court order that was valid in the eyes of the judge who issued it. And bound him to that court. However, was ultimately held to be constitutionally defective by the Texas Supreme Court. If we were to follow your logic, that is, of course, seems to me one of the fundamentals of our system is once the judge issues the order, right or wrong, it's valid until overturned. I'm having some trouble understanding how a party faced with a potentially conflicting order in one court is supposed to basically balance and say, well, I picked this one, not that one, and particularly where he's under a court order to do something. I mean, from both a policy and a constitutional standpoint, your position would basically turn J.P. Morgan into a super court of appeals deciding what it ought to do. Your Honor, from a policy perspective, there is a serious issue here. And I think we've pointed out in our briefs that if this court should make the determination that the mere existence of an order reduces all liability for wrongful dishonor, then the use of the letter of credit in a commercial venture is dead. Because in this case, it would be malpractice for any attorney to allow his client to utilize the letter of credit. We had a court without jurisdiction over the beneficiary, changed the beneficiary, and now it's very uncertain as to whether the beneficiary, the Tamarack Entities, will ever see this money. And with the gross constitutional defects in this case, lack of service for the underlying default judgment, the voidness of the turnover orders, now hundreds of millions of dollars in fines and sanctions that have accrued since then, if that is permissible merely because a judge got it wrong in Texas and J.P. Morgan complied, then letters of credit are dead. And I would respectfully request that this court make that clear in its written opinion so that the public is aware that despite the defect of a court order, it offers absolute immunity. Did you want to reserve the remaining time? I did. Thank you for your questions. May it please the Court and Counsel, Your Honor, Richard Howland of Lewis and Rocha, on behalf of Appellee J.P. Morgan Chase Bank. The issue before Your Honors is whether J.P. Morgan Chase is liable to Tamarack for Chase's compliance in 2004 with a then-existing court order. That's the turnover order issued by the Texas County Court. Let me ask you a question. Could we write an opinion that said any time there's a court order that J.P. Morgan is to follow the court order in facts such as this, that is, is there any type of order that you could conceive of that J.P. Morgan would be found in fault of obeying? Well, that's an awfully broad question, and I haven't considered every possibility. Well, that's all we have from the district court. Judge Campbell is a very fine district court judge, one of the best, I think, that we have. But he really didn't give us much more than there's an order out there, and therefore J.P. Morgan wins. And I understand district judges are very busy, and I'd be the last one to criticize Judge Campbell. But it seems that from just what he did say, that that's exactly where he ends up, that so long as there is any order out there, that J.P. Morgan is home free following the order. And the thought in my mind is, is that really true? Are there situations where J.P. Morgan, even though they have an order that tells him to make a turnover, would say, I can't do this, this order is invalid, or this order has no jurisdiction? If on its face it shows there's no jurisdiction, would J.P. Morgan still be able to say, there's an order there, so I'm going to do the second turnover? I think it's difficult to analyze that very abstract question, and I think the answer should really come based upon the turnover order that was, in fact, before the district court, the one issued by the Texas County Court. And that order, the actual order was before Judge Campbell. That order was issued by a court in Texas, a state where J.P. Morgan chased... Getting back to these facts, and that isn't what I wanted, I'm just hypothetically asking you, can you conceive of any way in which that order would be one in which J.P. Morgan should not follow it? Yes, I can. I can conceive of an order issued by a jurisdiction where J.P. Morgan chased bank is not present, has not rendered any appearance, and the bank would then not be subject to process. To that extent, then, maybe Judge Campbell's determination is a little broad. What your adversary is saying is, we have one of those situations. We have a situation where J.P. Morgan, if J.P. Morgan had looked at the entire situation, would not have followed the order of court and instead would have brought an action in the federal district court in Dallas or whatever and deposit the money in court and say, whoever is going to get it is to get it. It's fine with us. So I'm wondering whether that is one of those kinds of orders you have if J.P. Morgan was aware that a very fine state court judge had indicated there's absolutely no jurisdiction. On the other hand, J.P. Morgan has got a court order and has gone up to the Court of Appeals of Texas and been affirmed. Can J.P. Morgan, without anything further, doing anything further, pay that money out? Is it just the order itself that allows J.P. Morgan to do it, or is there something else that J.P. Morgan must do? I think that's the real question I have for you. It's a long question, but I think it's one that deserves an answer. I think the verb that you used, allow, is the critical point here. It's not whether J.P. Morgan was allowed to comply with the order. J.P. Morgan was obligated to comply with the order. The order was issued by a Texas court in a state where J.P. Morgan Chase was the largest bank. It had the most assets of any bank in the state at that time. It's a regulated institution in the state. It's subject to the orders of the Texas courts. Here it's not just we had an order from a Texas trial court. We had an order from the Texas Court of Appeals affirming the very default judgment on which the turnover order issued. In fact, the Texas Court of Appeals in December of 2003 expressly affirmed that turnover or, excuse me, expressly affirmed the default judgment in the prior turnover order. It was a week later that this particular turnover order was issued in the face of that Texas Court of Appeals decision. So am I correct that at the time that the payment was made, J.P. Morgan was well above the Arizona court, correct? Oh, that is correct, in fact. So my question would be this, similar to Judge Wallace. When you hear of a situation like that, the first thing that jumps to my mind from a civil procedure standpoint is interpleader, because what you're saying is, look, we don't care who gets the money in the sense of, you know, we have a contractual obligation. On the other hand, we know we owe the money, and so it's not like J.P. Morgan's trying to hang on to it. But we're really caught in the crossfire of this. So we're putting it into a court for purposes of letting a final decision be made. Wouldn't that have absolved you of any claim that you weren't following the Texas order? It would not. In fact, there are courts that have considered the question of whether a bank can utilize interpleader when faced with conflicting obligations on a letter of credit. And the answer is no, you cannot. And that's not the situation, because interpleader is a voluntary action by the bank. This wasn't a voluntary action by the bank. This was an involuntary action. The bank was presented with an order obligating the bank to comply, which was to turn over the proceeds of this letter of credit in the event that a draw was made. Now, the proceedings in Texas were very much like an interpleader action, because J.P. Morgan turned over the proceeds to the clerk of court. J.P. Morgan Chase wasn't a party to that proceeding. We had no stake in the outcome of that proceeding. We took no position in that proceeding. We tendered the funds and left it for the court to resolve who was entitled to those funds. So your position that was in effect an interpleader when you put the money in the court and let the court handle it, is that it? With one key difference. An interpleader is a voluntary action by the bank, whereas this was an involuntary action. We were ordered to do it. We were ordered to do it. So it was not in the nature of a State interpleader procedure. It was pursuant to court order as a third party. Exactly. Under the law of credit, the law of letters of credit, the question is whether J.P. Morgan Chase engaged in a wrongful dishonor. It's not wrongful to comply with the court order, whereas courts have held that it would be wrongful to voluntarily file an interpleader action. And so we didn't have that opportunity. That wasn't available. Suppose you actually knew it was void. The judge wasn't really a judge. You know, whatever. Would you still have that obligation? If J.P. Morgan Chase knew that the order, the turn of order was fabricated, that it was not, in fact, issued by the lawful courts of the State of Texas, I suppose that would be a much different situation and we would have had to assess whether or not the order was, in fact, the action of the State of Texas. That wasn't our situation, though, because there was no question that the order presented to J.P. Morgan Chase was, in fact, issued by the Texas County Court. Your opposition would say, but you did know it was invalid because Judge Bolton outlined the whole process, that the person at Ross had never received any pleading at all, so it was completely void. Aren't you in that position if you knew about the Bolton decision? Judge Bolton, who was then a state court judge, was presented with the Texas default judgment for purposes of domestication and execution in Arizona, and Judge Bolton ruled that the order was not sufficient for purposes of execution in Arizona. Now, the argument that's made by Tamarack was presented expressly to the Texas Court of Appeals, and this is what they ruled, and they ruled this in December of 2003, before the second turn of order was issued, before we tendered the funds to the court. Quote, we reject Mr. Ross's contention that the Arizona state court order vacating the foreign judgment in Arizona has the effect of voiding the Texas default judgment for enforcement purposes in Texas. That very issue was expressly decided by the Texas Court of Appeals against Tamarack's position, and that was the state of affairs that was presented to J.P. Morgan Chase. That was the state of affairs that was presented to Judge Campbell. And in light of that state of affairs, the bank had no choice. The bank couldn't decide, as the questions were presented before, the bank couldn't decide on its own that the Texas Court of Appeals was wrong. That's not an issue for a bank, and it's not a policy that I think this court wants to force upon banks. Rather, the policy should be that banks comply with court orders, and the means to obtain relief from a bad court order, or one that you believe is bad, is a court of appeals. And we see here. If there had been no court order, it would have been obliged to pay it over to Tamarack and then go after access. Wouldn't that be true, had there not been a court order? Yes. Had there not been a court order, the draw that was made upon the letter of credit would have been paid to Tamarack. And that would have been the end of the matter as far as it pertains to Tamarack and JPMorgan Chase Bank. So the key here is the court order. That's the sole key here. That's the reason why the funds were paid to the clerk of court rather than to Tamarack, because the bank was obligated by court order to do so. Would you explain the proceeding that's now taking place in Texas, which you had intimated in your filings may render this case moot? What is the status of that? Yes. On August 31st of 2006, the Texas Supreme Court vacated the turnover order. On October 30th, 2006, Mr. Ross, the statutory agent and manager of Tamarack, fought a motion to set aside the turnover order in the Texas County Court and to order repayment of the funds either to the custody of the court or to JPMorgan Chase for payment to Tamarack. A hearing had been set for November 16, 2006, in the Texas County Court. I understand that that hearing was vacated by Mr. Ross. The hearing has now been set for May 31st of 2007. And that's not a proceeding that the bank is participating in, but it is a proceeding that if the relief sought by Mr. Ross is granted, the funds will be repaid and then presumably will be distributed to Mr. Ross. And he will then obtain the funds, the proceeds of that letter of credit. And I submit that is the means, the proper means for obtaining the relief that Tamarack seeks here. They should do it through the Texas courts because that's where their real complaint lies. The Texas Supreme Court in its per curiam decision, the second per curiam decision, says in this appeal, Petitioner Richard Ross seeks to review a turnover order. It's never designated which turnover order is involved, whether it's the first turnover order or second turnover. I've been assuming it's second, but I don't know. It's my understanding that the turnover order that we're talking about today is the order that was overturned. Yes. They just designated it as A, but as you understand, that is the second turnover order. That's my understanding, yes. So let's just kind of spin out hypothetically. So if on May 31 there's an order that the money should go either to the court or back to Tamarack, would that order be appealed? I assume that any court order issued by a Texas court or any other court is subject to an appeal. So if but with the ad hunt of a new order, if the order said turn it over, then the money which had gone this way will go back that way. Is that right? And you would turn it over? Well, so J.P. Morgan Chase did in fact pay on the letter of credit. J.P. Morgan Chase paid more than $1.1 million to the custody of the Texas County Court. The motion that's pending in Texas is to take that money and to restore it to the custody of the clerk of court or to pay it to J.P. Morgan Chase for payment to Tamarack. That's the two relief that Mr. Ross has sought. And in the event that he is successful, Tamarack will obtain the proceeds of the letter of credit. Presumably they will seek interest on those proceeds. Presumably they will seek their attorney's fees in Texas. All of the relief that they complain about, it's not the bank that caused their harm. It's their dispute with Access Health Source and its successor, and that's the way that the process should work. How would that have any ñ it would not have, as I understand your argument, anything to do with what J.P. Morgan did in relation to paying in the money pursuant to the second turnover order, which you're saying had become moot because the parties have resolved the problem. You're not getting any money back anyway. Yours is gone. The question of whether or not what the bank did in July of 2004 and whether or not Judge Campbell's ruling in March of 2005 is correct, that's not going to be changed by what happens in May 31st of 2007. So moot maybe isn't the right concept. The harm that Tamarack complains about will be alleviated. Their claim will then evaporate because the harm they complain of will no longer exist. Would there be any damages available to them under the letter of credit for wrongful dishonor other than the face amount of the letter of credit? So in other words, let's say we were to rule in their favor and then at the May 31 hearing the money either goes back to you or back to the court and they get their face value. Would there still remain a potential claim against J.P. Morgan? Well, I don't believe so for anything that happened in July of 2004 or that was before the district court when the district court ruled in March of 2005. J.P. Morgan did not engage in wrongful dishonor. I'm not saying if it were determined that it did. I know you don't think it did. Yes. I'm just saying if it were determined that you're wrong and there was a wrongful dishonor back then, would there be remaining on the table some kernel of a claim for Tamarack vis-à-vis J.P. Morgan? Well, I believe that they seek the proceeds of the letter of credit, interest on those proceeds and attorney's fees. And to the extent that they're not fully compensated for those things, presumably they might feel that they have some uncompensated damages that they would assert against J.P. Morgan Chase Bank. Thank you. Thank you, Your Honor. Your Honors, in regard to the question about the May 31st proceeding, the reason the letter of credit is utilized is because the bank becomes the primary obligor. Assuming that Richard Ross is granted the relief he's seeking in that May 31st hearing, there is no assurance that that money will ever be forthcoming. The money was released by the Texas County Court to the access parties. Now, in this court's order of January 5th, you asked the parties to explain exactly who has possession of those funds now. And J.P. Morgan, in its supplemental brief responding to that, presented the courts from outside-the-record tracings of those funds. When I say outside-the-record, outside-the-record that was before Judge Campbell when he issued his decision. Right up to the point, however, of when it could have acknowledged that it actually has been repaid by the obligor, it neglected to do so. And it did so in its supplemental brief for two reasons. It said, first, it would be inappropriate because it was outside-the-record, and second, it's because it's irrelevant. I use that as an example to show that J.P. Morgan does have the capability of receiving a court order and determining not to follow it as it's written. This court specifically asked the parties to brief who had the money. That was not within the knowledge of the TAMRAC entities. All we know, it was repaid to the court and then released to the access parties. It was within the scope and knowledge of J.P. Morgan to go ahead and admit, yes, and now we've received the funds back, and it declined to do so. Thank you. Thank both counsel for your argument this morning. The case of J.P. Morgan v. TAMRAC is submitted.
judges: Wallace, D.W. Nelson, McKeown